STANDARD ACCIDENT INSURANCE CO *v.* CITY OF DETROIT.
SAME *v.* COUNTY OF WAYNE.

1. TAXATION—TAX DAY.

   There can be only one tax day each year for the assessment of property for general taxes.

2. SAME—PROPERTY—INSURANCE COMPANIES.

   Insurance companies must be assessed for property taxes pursuant to general property tax law provisions requiring determination to be made in accordance with the last report of the commissioner of insurance (1 Comp. Laws 1929, § 3399).

3. SAME—CONSTRUCTION OF MUNICIPAL CHARTERS.

   Municipal charters will not be so construed as to change the operation of the general tax laws, unless such an intent is plainly expressed.

4. SAME—UNIFORM RULE OF TAXATION AS TO PROPERTY.

   It is the duty of the legislature to provide a uniform rule of taxation, except upon property paying specific taxes (Const. 1908, art. 10, § 3).

5. SAME—DETERMINATION OF VALUE.

   The matter of deciding the value of property for purposes of taxation, about which men may differ, calls for the exercise of judgment.

6. SAME—DETERMINATION OF VALUE—UNIFORMITY—DOMESTIC INSURANCE COMPANIES.

   Statute imposing duty upon commissioner of insurance to determine value of property of domestic insurance companies for purposes of taxation under the general property tax law does not violate the constitutional requirement of uniformity of taxation (Const. 1908, art. 10, § 3; 1 Comp. Laws 1929, § 3399).

7. INSURANCE—REPORTS OF DOMESTIC COMPANIES—GENERAL PROPERTY TAX.

   The complete and detailed annual report of a domestic insurance company to the commissioner of insurance forms the basis

from which the commissioner determines the fitness of the company to continue doing business for the company year and from which he issues a certificate of authority and the latter is the report upon which the assessment of the company's property for taxation is based (Comp. Laws 1929, §§ 3399, 12252, 12253).

8. TAXATION—GENERAL PROPERTY TAX—DOMESTIC INSURANCE COMPANIES—MUNICIPAL CHARTERS.

General property tax upon property of domestic insurance company with home office in home rule city was assessable as of December 31st in accordance with provisions of general property tax law specifically applicable to insurance companies instead of tax day set by city charter where nothing appears in the charter showing an intent to affect the operation of the general taxing laws as applied to such companies (1 Comp. Laws 1929, § 3399; Detroit Charter [1918], title 6, chap. 2).

9. COSTS—PUBLIC QUESTION—DETERMINATION OF TAX DAY.

No costs are allowed in action to determine day upon which property of a domestic insurance company was assessable, a public question being involved.

Appeal from Wayne; Moll (Lester S.), J. Submitted October 7, 1943. (Docket Nos. 46, 47, Calendar Nos. 42,440, 42,441.) Decided December 29, 1943.

Separate actions of assumpsit by Standard Accident Insurance Company against City of Detroit and others and County of Wayne and others to recover taxes paid under protest. Cases tried together and consolidated for appeal. Judgments for plaintiff. Defendants appeal. Reversed.

*Paul E. Laymon, Harold A. Johnson,* and *Edward Moseman,* for plaintiff.

*Paul E. Krause,* Corporation Counsel, and *John G. Dunn,* Assistant Corporation Counsel, for defendants City of Detroit and others.

*William E. Dowling,* Prosecuting Attorney, and *Samuel Brezner* and *Helen W. Miller,* Assistants Prosecuting Attorney, for defendants County of Wayne and others.

BUTZEL, J. Plaintiff insurance company, a Michigan corporation, with main office in Detroit, on or before March 1, 1941, filed its annual report with the commissioner of insurance of the State of Michigan, showing its condition on December 31, 1940, as required by law (3 Comp. Laws 1929, § 12252 [Stat. Ann. § 24.10]).

During the first three months of 1941, plaintiff made a very substantial change in the form of its assets by acquiring a large amount of tax-exempt assets, thus increasing its investments of that character from $6,665,993 to $8,564,720.95. On April 1, 1941, plaintiff was assessed by the city of Detroit on the basis of net assets and exemptions as disclosed in its annual report to the insurance commissioner showing its condition and the character of its assets as of December 31, 1940. Plaintiff, claiming that the assets to be examined to determine their character as to taxability should be those of April 1, 1941, and not those of December 31, 1940, paid the taxes under protest and, after unsuccessful reviews, brought suits against the city of Detroit to recover $61,847.99, and the county of Wayne to recover $12,238.63. The two suits were heard together, the same questions being involved in each of them. They are brought here on one record. The trial judge entered judgment for plaintiff in each case for a large amount representing taxes on over-assessments, which plaintiffs claimed were illegally exacted from it. Defendants appeal.

The questions involved arise out of the construction of the statutes of the State and the charter of

the city of Detroit. The charter of the city of Detroit (title 6, chap. 2, charter of Detroit of 1918, with revisions to April 6, 1931) empowered the board of assessors of the city of Detroit to assess all property liable to assessment, to demand statements from all persons, and to complete the assessment rolls on April 1st of each year. Thus April 1st became the tax day for the city of Detroit. *Detroit Trust Co.* v. *City of Detroit,* 248 Mich. 612. The subsequent amendment of April 7, 1941, to the Detroit city charter does not affect the instant case. Section 11 of the general property tax law contains provisions in regard to the assessments of corporations engaged in maritime commerce or navigation, and to the exemption of property of corporations paying specific taxes. It further provides as follows:

"In computing the taxable property of insurance companies organized under the laws of this State, the value of the real property on which a company pays taxes shall be deducted from its net assets above liabilities, as determined and shown by the last report of the commissioner of insurance, including in such liabilities the legal reserve required by the laws of this State, or the regulations of the insurance department, and the remainder shall be the personal property for which the company shall be assessed." 1 Comp. Laws 1929, § 3399 (Stat. Ann. § 7.11).

Under this section the personal property subject to assessment must be determined as of the previous December 31st as shown by the report to the insurance commissioner. The correct rule of law that there can be only one tax day seems to be conceded by the parties to the litigation. Plaintiff, however, claims that this must be April 1st of each year for the city of Detroit, and that if December 31st is

taken as the tax day for insurance companies whose main offices are in Detroit, as indicated in the quoted section (3399), there is a gap in the law, for that section makes no provision in regard to tax-exempt securities and their character and status should be determined from the assets held on April 1st.

Plaintiff further argues that section 107 of the general tax law provides "This act shall be applicable to all cities and villages where not inconsistent with their respective charters," (1 Comp. Laws 1929, § 3500 [Stat. Ann. § 7.161]), and that the charter of the city of Detroit provided that April 1st was the tax day on which the assessment rolls shall be complete. However, section 13 of the general tax law (prior to its amendment by Act No. 234, Pub. Acts 1941 [Stat. Ann. 1943 Cum. Supp. § 7.13]) also provided that all personal property was to be assessed to the owner in the township of which he was an inhabitant on the second Monday of April of the year for which the assessment is made (1 Comp. Laws 1929, § 3401 [Stat. Ann. § 7.13]), while section 11 (1 Comp. Laws 1929, § 3399 [Stat. Ann. § 7.11]) provides that all corporate property, except where some other provision is made by law, shall be assessed to the corporation as to a natural person, in the name of the corporation. It thus appears that the same general tax law which designates the second Monday of April as the tax day for townships contains the provision hereinbefore quoted as to insurance companies. Section 19 of the same general property tax law further provided that: "The president, secretary, or principal accounting officer of any company or association, incorporated or unincorporated, except * * * insurance * * * companies and * * * corporations, the taxation of which is specifically provided for by law, shall make out and deliver to the

assessor,'' the statement of its personal property, the assets and liabilities, et cetera.  1 Comp. Laws 1929, § 3407 (Stat. Ann. § 7.19) (prior to amendment by Act No. 231, Pub. Acts 1943 [Comp. Laws Supp. 1943, § 3407, Stat. Ann. 1943 Cum. Supp. § 7.19]). This provision expressly makes an exception in regard to insurance companies, "the taxation of which is specifically provided for by law."

From the foregoing it plainly appears that insurance companies must be assessed in accordance with 1 Comp. Laws 1929, § 3399 (Stat. Ann. § 7.11), as hereinbefore quoted.  The same rule that applies to villages also applies to cities under 1 Comp. Laws 1929, § 3500 (Stat. Ann. § 7.161).  In *Howell* v. *Village of Cassopolis,* 35 Mich. 471, we held in regard to an entirely different question in the law of taxation that village charters will not be so construed as to change the operation of the general tax laws, unless such an intent is plainly expressed.

All parties lay much stress on former opinions of this court, but careful examination shows the claims plaintiff asserts are presented for the first time.  In *City of Yale* v. *Michigan Farmers' Mutual Fire Insurance Company of St. Clair and Sanilac Counties,* 179 Mich. 254, and *Detroit Fire & Marine Ins. Co.* v. *Hartz,* 132 Mich. 518, the reports to the commissioner of insurance were used as a basis of assessment, as well as to determine the taxability of the assets disclosed therein.  In *Michigan Mutual Life Ins. Co.* v. *Hartz,* 129 Mich. 104, the court in referring to the reports to the insurance commissioner significantly said:

"We do not agree with counsel in this conclusion. It is true that it is the duty of the legislature to provide a uniform rule of taxation, except upon property paying specific taxes.*  It is also true that

---

\* See Const. 1908, art. 10, § 3.—REPORTER.

the matter of deciding the value of the property, about which men may differ, calls for the exercise of judgment. The value of a large and complex business may require the exercise of the judgment of men trained in the business, and possessing the knowledge not possessed by the ordinary man. We all know that the business of life insurance has attained enormous proportions. It affects so many interests that the State has attempted to say under what conditions it may be conducted, and has created a department of insurance for the purpose of supervising the business. The legislature has given the insurance commissioner very large powers, calculated to enable him to find out what are the assets of any and all companies doing business in the State. The legislature, evidently believing that the commissioner was especially qualified to determine the amount of the assets of insurance companies, passed the statute in question. There is nothing in the record to indicate that tax assessors would be more likely to do this work well, than would the insurance commissioner; but, whether they would or not, the legislature has seen fit to impose the duty upon the insurance commissioner. The statute applies to all insurance companies organized under the laws of this State, and does not violate the constitutional requirement of uniformity of taxation.''

The report of the company to the commissioner must be filed on or before March 1st. 3 Comp. Laws 1929, § 12252 (Stat. Ann. § 24.10). This complete and detailed report forms the basis from which the commissioner determines the fitness of the company to continue doing business for the company year and from which he issues a certificate of authority. 3 Comp. Laws 1929, § 12253 (Stat. Ann. § 24.11), provides for the issuance of the certificate on or before April 1st. It is this latter report which is referred to in 1 Comp. Laws 1929, § 3399, as ''the last report of the commissioner of insurance.'' Were

the assets as disclosed by the report to the insurance commissioner not examined to determine whether they were tax exempt or not, it would be contrary to the express provisions of the law regulating the assessments based on the reports of insurance companies. Insurance companies are licensed, regulated and supervised by law. The list of assets are carefully scrutinized by the insurance commissioner. It would be paradoxical to make all the provisions safeguarding the public by careful examination of the investments, et cetera, of insurance companies and then permit them to change the investments into tax-exempt property or securities, whether done for business or tax-savings purposes. Available cash could be used up, or moneys could be borrowed to purchase tax-exempt securities, and thus liabilities might be created to offset taxable credits, including moneys in the bank. One of the purposes of the insurance law could thus be frustrated. Even though the new liabilities thus created were not used to offset credits, the statement presented to the assessors would be different from the one provided by law for assessment purposes.

There is nothing in the charter of the city of Detroit showing an intent to affect the operation of the general taxing laws, as applied to insurance companies. Plaintiff is governed by the general property taxing law. It is unnecessary to discuss the claim of defendants that the practice of the taxing authorities always has been to assess insurance companies in accordance with the last report filed with the insurance commissioner.

The judgment of the lower court is reversed, but without costs, as a public question is involved.

Boyles, C. J., and Chandler, North, Starr, Wiest, Bushnell, and Sharpe, JJ., concurred.